# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DELORES VICTORY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-281-JHP-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Delores Victory requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on January 11, 1973, and was thirty-seven years old at the time of the administrative hearing. She has a high school education and past relevant work as a garment sorter, fast food cook, cashier, poultry eviscerator, and nurse assistant (Tr. 37). The claimant alleges that he has been unable to work since September 1, 2007, because of panic attacks, borderline schizophrenia, avoidance of social situations, high anxiety, and migraine headaches (Tr. 149).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on November 10, 2008. The Commissioner denied her applications. ALJ Michael A. Kirkpatrick held an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 24, 2010. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels except that the claimant was limited to performing "simple,

unskilled tasks which do not require interaction with the general public and which do not require more than incidental contact with coworkers" (Tr. 16). The ALJ concluded that the claimant was able to return to her past relevant work as a poultry eviscerator and garment sorter (Tr. 19). Thus, the ALJ concluded that the claimant was not disabled at step four (Tr. 19).

### Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze her credibility; ii) by improperly analyzing her RFC at step four; and iii) by finding that the claimant was capable of returning to her past relevant work as a poultry eviscerator and garment sorter. The undersigned Magistrate Judge finds the claimant's second contention persuasive.

The claimant testified that she is "tired all the time" and lies down approximately six hours per day (Tr. 31). She stated that she has no social life or hobbies, and that she gets nervous, agitated and has panic attacks when around others (Tr. 32-33). During a panic attack, the claimant testified that the "walls around [her] will start closing in, and [she'll] get really agitated and [she'll] start getting violent, and [she'll] blackout where [she] won't remember what happened" (Tr. 33). She stated that she often forgets things that she does or says and has had suicidal thoughts (Tr. 33-34). The claimant's husband testified that the claimant has panic attacks three to four times per week and when she blacks out during panic attacks, she becomes "highly aggressive," hitting him and breaking things (Tr. 35-36).

State examining physician Dr. B. Todd Graybill, Ph.D. conducted a Mental Status Examination of claimant on February 12, 2009 (Tr. 304-05). During the interview, the claimant stated that she had a nervous breakdown while working at McDonalds, which she described as "her first major panic attack" (Tr. 223). During her breakdown, the claimant stated that she felt out of control, started stuttering and shaking, and "felt the people were talking about her and trying to get her fired" (Tr. 223). The claimant described feeling anxious whenever going out in public and stated that she "thinks she hears her spouse calling her name at times" and sees "shadows out of the corner of her eye" (Tr. 224). Dr. Graybill described claimant as "anxious and restless in her manner" but also "friendly, talkative, and cooperative" (Tr. 224). Dr. Graybill's diagnostic impression was that claimant suffered from panic disorder with agoraphobia, inadequately treated and major depression, single episode in substantial remission with treatment" (Tr. 225).

State examining physician Dr. Cynthia Kampschaefer, Psy.D. completed a Psychiatric Review Technique on February 24, 2009 (Tr. 227-43). Dr. Kampschaefer found that claimant's mental health impairment fell under the umbrella of affective disorders and anxiety-related disorders and was characterized by difficulty concentrating or thinking and generalized persistent anxiety, and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week (Tr. 230-32). As a result, she concluded that claimant had mild limitations in activities of daily living,

moderate limitations in maintaining social functioning, and mild limitations in maintaining concentration, persistence, or pace (Tr. 237). In addition, Dr. Kampschaefer completed a Mental Residual Functional Capacity Assessment in which she found that the claimant was markedly limited in her ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public (Tr. 241-42). Dr. Kampschaefer's written notes state that the claimant is able to perform simple and some, but not all, repetitive, more complex tasks in a familiar setting (Tr. 243). Dr. Kampschaefer also wrote that claimant "works best with limited contact with supervisors and is able to tolerate occasional incidental work contact with coworkers[,]" and that while claimant may "tolerate occasional incidental work contact with coworkers[,]" she "cannot tolerate contact with the general public" (Tr. 243). State reviewing physician Dr. Kathleen Gerrity, Ph.D. echoed Dr. Kampschaefer's findings in her Psychiatric Review Technique and accompanying Mental Residual Functional Capacity Assessment (Tr. 246-63).

The claimant received her mental health treatment, which started January 8, 2009, from Bill Willis Community Mental Health and Substance Abuse Center (Tr. 266-87). During her intake interview, the claimant stated that she was seeking treatment for her problems hurting herself and her family mentally because of her disorder and that she was taking Prozac (Tr. 266). She described having several symptoms, including, *inter alia*, serious anxiety/tension, thoughts of harming herself, and having hallucinations (Tr. 267). During her Psychiatry Assessment on April 14, 2009, the claimant stated that she

has panic attacks, anxiety, depression and trouble sleeping at night and that she is quick to anger (Tr. 277). While describing her anxiety, the claimant stated that she gets overwhelmed and her mind starts racing, and during panic attacks, the claimant stated that her palms get sweaty, her vision is blurred, the walls close in, and she starts breathing heavily (Tr. 277). She experiences paranoia, and described it as feeling as though people are out to get her and that people are either talking about her or judging her (Tr. 277). The Axis I diagnosis at that time was adjustment disorder with anxiety, panic and depression (Tr. 279). The claimant's counselor, Beverly Bargar, B.S., P.S.R.S., C.M., submitted a letter on April 1, 2010, in which she wrote that the symptoms claimant experiences as a result of her anxiety disorder and major depressive disorder "make it almost impossible for her to be out in or work with the public" (Tr. 283). Ms. Bargar also submitted a form entitled "Residual Functional Capacity Secondary to Mental Impairments, Including Pain, Fatigue, and Hysterical Paralysis" (Tr. 284-87). In that form, Ms. Bargar opined that claimant had marked limitations (defined as "[f]rom sixteen to thirty percent or more of work time, the individual cannot usefully perform or sustain the activity) in the following functional categories: i) relate to coworkers; ii) interact with supervisors; iii) deal with work stresses; iv) function independently; v) remember locations; vi) remember work-like procedures; vii) understand very short and simple instructions; viii) understand detailed or complex instructions; ix) remember detailed or complex instructions; x) carry out very short and simple instructions; xi) carry out detailed or complex instructions; xii) maintain attention for extended periods of time;

xiii) perform activities within a schedule; xiv) maintain regular attendance; xv) be punctual within customary tolerances; xvi) sustain an ordinary routine without special supervision; xvii) work in coordination or proximity to others without being distracted by them; xviii) complete a normal workday (without interruptions from psychologically-based or pain-related symptoms); xix) complete a normal workweek (without interruptions from psychologically-based or pain-related symptoms); xx) perform at a consistent pace; xxi) perform without an unreasonable number or length of rest periods; xxii) avoid undue constriction of interests; xxiii) demonstrate reliability; xxiv) respond appropriately to changes in work procedures; xxv) be aware of normal hazards and take appropriate precautions; xxvi) travel in unfamiliar places or use public transportation; xxvii) make plans independently of others; xxviii) respond and adjust to the use of new and unfamiliar tools and/or machines; xxix) behave in an emotionally stable manner; xxx) deal with the general public; xxxi) ask simple questions and request assistance; xxxii) accept instructions and respond appropriately to criticism from supervisors; xxxiii) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; xxxiv) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness (Tr. 284-86).

The ALJ mentioned Ms. Bargar's opinion and summarized her findings, but stated only that her "opinion regarding claimant's inability to work in or with the public has been taken in to consideration in the finding of claimant's residual functional capacity" (Tr. 18). He failed to discuss any of Ms. Bargar's other findings, *i. e.*, that claimant was

markedly limited in her ability to complete a normal workday/workweek, respond appropriately to changes in work procedures, and maintain attention for extended periods of time, *inter alia*, or explain why he was apparently rejecting most of her findings but accepting her opinion about the claimant's ability to work with the public. His consideration of Ms. Bargar's "other source" opinion was thus clearly inadequate. *See, e.g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" and by considering the 20 C.F.R. 404.1527, 416.927 factors in determining the weight of these opinions). *See generally* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 (discussing considerations of evidence from sources who are not acceptable medical sources and stating that "[a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning") [emphasis added].

Social Security Ruling 06-03p "specifies that the factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. 404.1527(d) and 416.927(d) apply equally to all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other sources' [and] instructs the adjudicator to explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion . . . allows a

claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Frantz*, 509 F.3d at 1302 [internal quotations omitted]. Those factors are the familiar ones: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ made no reference to any of these factors; he apparently rejected all of Ms. Bargar's findings *except* those related to the claimant's inability to work with the public with no explanation whatsoever. While the Court may infer that the ALJ preferred the findings of the state reviewing physicians over that of claimant's counselor, the ALJ never explains what weight he is attributing to Ms. Bargar's opinions and never attempts to explain his reasoning behind adopting some, but not all, of her findings, and it is not the Court's position to draw conclusions on the ALJ's behalf. *See, e.g.,Drapeau*, 255 F.3d at 1214 (noting that a reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991). *See also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The

claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Frantz*, 509 F.3d at 1302 [internal quotations omitted]. Those factors are the familiar ones: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ made no reference to any of these factors; he apparently rejected all of Ms. Bargar's findings *except* those related to the claimant's inability to work with the public with no explanation whatsoever. While the Court may infer that the ALJ preferred the findings of the state reviewing physicians over that of claimant's counselor, the ALJ never explains what weight he is attributing to Ms. Bargar's opinions and never attempts to explain his reasoning behind adopting some, but not all, of her findings, and it is not the Court's position to draw conclusions on the ALJ's behalf. *See, e.g.,Drapeau*, 255 F.3d at 1214 (noting that a reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991). *See also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The

ALJ's decision should have been evaluated based solely on the reasons stated in the decision."), *citing Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-169 (1962).

Because the ALJ failed to properly analyze the "other source" opinion of claimant's counselor, Ms. Beverly Bargar, the undersigned Magistrate Judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 12th day of September, 2012.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma